ESTATE OF WALTER E. RICHARDSON, JR., JEAN REICH
RICHARDSON WILLIAMS AND WALTER E. RICHARDSON
III, COEXECUTORS, PETITIONERS *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket No. 34028-85.          Filed December 21, 1987.

*Richard D. Holton* and *L. Glenn Worley,* for the petition-
ers.
*Gary F. Walker,* for the respondent.

### FINDINGS OF FACT AND OPINION

DRENNEN, *Judge:* Respondent determined a deficiency in
petitioners' Federal estate tax in the amount of $136,456.
The sole issue[1] presented by the parties for decision is
whether interest payable by the petitioners on (i) Federal
estate taxes, (ii) State inheritance taxes, and (iii) deficiencies
with regard to such taxes should reduce the net value of the
property interest passing to the surviving spouse which
qualifies for the marital deduction allowable to petitioners
under Code section 2056(a).[2]

### FINDINGS OF FACT

Walter E. Richardson, Jr. died testate on January 1,
1982. Petitioners Jane Reich Richardson Williams and
Walter E. Richardson III are the duly qualified and acting
coexecutors for the Estate of Walter E. Richardson, Jr. (the
estate), under letters testamentary granted on January 5,
1982, by the probate court of Davidson County, Nashville,
Tennessee. Petitioners are individuals with legal addresses
in Nashville, Tennessee, at the time they filed the petition
in this case.

---

[1] A procedural issue raised by respondent's motion for leave to file answer to amendment to
petition, objected to by petitioner, will be dealt with later, if necessary.

[2] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954
as amended and in effect as of the date of the decedent's death. All Rule references are to the
Tax Court Rules of Practice and Procedure.

Jean Reich Richardson Williams (surviving spouse or spouse) was the wife of the decedent at the date of his death.

The decedent's will provided, in pertinent part, as follows:

### ITEM 1

I direct that all of my just debts (excluding debts secured by mortgages, pledges or other security instruments which, in the discretion of my Executors, may be paid or retained) and funeral expenses be paid by my Executors out of my residuary estate as soon as may be practicable after my death.

My Executors shall likewise pay out of my residuary estate, and not apportion against the share of any beneficiary, all fees and expenses incident to the administration of my estate and all inheritance, succession, and estate taxes assessed against my estate [excluding any tax imposed under Section 2601 of the Internal Revenue Code of 1954, as amended (the "Code"), or under Tennessee law, on any generation-skipping transfer], including any such taxes as may be so assessed on account of policies of insurance on my life, jointly held property, or other property taxable as a part of my estate, but not coming into the hands of my Executors; provided, that any amounts paid out of my residuary estate for inheritance, succession, or estate taxes shall be charged against that portion of my residuary estate which is hereinafter devised to the Trustees of the Richardson Family Trust.

\*    \*    \*    \*    \*    \*    \*

### ITEM VI

In the event my wife, Jean Reich Richardson, survives me ... I give, devise, and bequeath to her, without condition or limitation, that fractional share of or the entire residue of my estate \* \* \* required to obtain for my estate the maximum allowable marital deduction, after taxes, as finally determined for federal estate tax purposes under the provisions of the Internal Revenue Code in effect at the time of my death, less the aggregate marital deductions allowable other than under the provisions of this item. In no event, however, shall this fractional share exceed such minimum amount which, if allowed as a deduction to my estate, would render my estate nontaxable for federal estate tax purposes, after giving effect to all other deductions and credits claimed and allowed for such purposes in my estate. \* \* \*

I intend that this bequest shall qualify for the marital deduction under section 2056 of the Code, \* \* \* and the provisions of this item shall be interpreted in accordance with this intent.

### ITEM VII

I give, devise, and bequeath the balance, if any, of the residue of my estate, to my wife, Jean Reich Richardson, and Walter E. Richardson, III, of Williamson County, Tennessee, as Trustees of a trust designated

as the Richardson Family Trust. This trust shall be administered in accordance with the following special provisions:

1. The Trustees shall divide the corpus of the Trust into equal shares, one for each of my then living children and a share, per stirpes, for the issue of any of my children as may then be deceased. The trustees shall have absolute discretion in allocating assets among said shares and their judgment shall not be subject to question.

2. The Trustees shall distribute the entire net income from each share to the beneficiaries thereof.

\*     \*     \*     \*     \*     \*     \*

### ITEM IX

My Executors shall, in their sole discretion, make reasonable allocations of the property comprising my estate in satisfaction of any devise or bequest contained herein or in the allocation of the residue of my estate in fractional shares as hereinbefore directed. My Executors shall not, however, exercise the discretion given them in this paragraph in a manner that will result in a loss of, or decrease in, the marital deduction otherwise allowable to my estate in determining either the federal estate tax or Tennessee inheritance tax liability of my estate.

In addition to all other powers, and notwithstanding any other provision of this my will, my Executors shall have full discretion to apply the deductions allowable for claims, expenses, indebtedness, taxes, and losses, as contemplated by Sections 642, 2053, and 2054 of the Code, as the same now exist or may hereafter be amended, to either income tax or estate tax in such manner as to minimize the total state and federal income and death taxes payable by my estate or as a result of my death. Such allocation may be made regardless of whether its effect is to favor one beneficiary or class of beneficiaries over another or whether such charges shall be charged to income or principal for distribution purposes.

On October 4, 1982, the Internal Revenue Service Center, Memphis, Tennessee, received on behalf of the estate a Form 706, "United States Estate Tax Return" (Federal estate tax return), filed by petitioners showing total Federal estate tax liabilities of $25,144. Petitioners also filed a Form F Rv-0128, "Estate of Tennessee Inheritance Tax Return," (State inheritance tax return) showing total State inheritance tax liabilities of $286,954.

On the Federal estate tax return, the estate reported a total gross estate, on the alternate valuation date, of $6,815,487. This included 15,968 shares of Inter-State Paving Co. class A common, and 120,010 shares of class B common, with a reported value of $5,043,288. It claimed deductions in the following amounts, which respondent does not dispute:

| Item | Amount |
|---|---|
| Funeral expenses | $12,736 |
| Administration expenses | 553 |
| Debts of decedent | 108,949 |
| Total | 122,238 |

It also claimed a deduction for bequests to surviving spouse in the amount of $6,381,092.

Petitioners filed Forms 1041, "U.S. Fiduciary Income Tax Return," for the estate for the period ending August 31, 1982, and for the fiscal years ending August 31, 1983, 1984, and 1985, wherein deductions were claimed for interest, taxes, fiduciary fees, attorney's and accountant's fees, and other deductions as follows:

| | Fiscal year ending Aug. 31— | | | |
|---|---|---|---|---|
| Item | 1982 | 1983 | 1984 | 1985 |
| Interest | $1,044 | 0 | 0 | $1,743 |
| Taxes | 2,764 | $2,343 | $3,948 | 0 |
| Fiduciary fees | 7,316 | 0 | 0 | 0 |
| Professional fees | 0 | 50,806 | 65,874 | 23,316 |
| Other deductions | 170 | 17,916 | 0 | 0 |
| Total | 11,294 | 71,065 | 69,822 | 25,059 |

Petitioners filed amended Forms 1041 for the fiscal years ended August 31, 1984, and 1985, claiming deductions for interest, taxes and professional fees as follows:

| | FYE Aug. 31— | |
|---|---|---|
| Item | 1984 | 1985 |
| Interest | 0 | $1,743 |
| Taxes | $3,949 | 0 |
| Professional fees | 14,211 | 0 |
| Total | 18,160 | 1,743 |

On June 6, 1985, respondent mailed to petitioners a statutory notice of deficiency reflecting a net estate tax of $161,600, less estate tax assessed of $25,144, and a deficiency of $136,456. The adjustments made to the estate tax return as filed were an increase in the value of the Inter-State Paving Co. stock in the amount of $2,666,494 and an increase in the marital deduction in the amount of $2,239,521.

As of the date of trial, the State of Tennessee had not issued any written notice to petitioners stating that the "State of Tennessee Inheritance Tax Returns" had been accepted as filed, nor had the State of Florida issued such a

notice with respect to the inheritance tax return filed with it.

In their petition filed herein on September 6, 1985, petitioners disputed $104,268 of the deficiency determined by respondent, citing as error in paragraph 4(a) that in determining the maximum allowable marital deduction, as adjusted to reflect the adjusted value of decedent's Inter-State Paving Co. stock, the deduction was increased only $2,239,521, whereas it should have been increased by $2,583,560 to a total of $8,964,652.

The facts alleged in paragraph 5 to support this allegation of error were as follows:

(a) The Explanation of Adjustments included in the Notice of Deficiency states that the marital deduction is adjusted to reflect the adjusted value of the Inter-State Paving Company stock and the "result of the computation presented in the attached Exhibit A." Exhibit A was not attached to the Notice of Deficiency. The correct adjustment to the marital deduction should be as follows:

| | |
|---|---|
| Marital deduction (per return) | $6,381,092 |
| Plus: Increase in estate (per adjustment) | 2,666,494 |
| | 9,047,586 |
| Less: Increase in Federal estate taxes | 32,188 |
| Attorneys & accountants fees (on 1041) | 50,806 |
| Revised amount available to fund the marital deduction bequest | 8,964,593 [sic] |

In his answer filed November 5, 1985, respondent denied the assignment of error in paragraph 4 of the petition, and denied paragraph 5 "except admits that the explanation of adjustments included in the notice of deficiency states that the marital deduction is adjusted to reflect the adjusted value of the Interstate Paving Company stock and the 'result of the computation presented in the attached Exhibit A.'"

On February 3, 1986, this case was noticed for trial in Richmond, Virginia, starting May 19, 1986. On April 22, 1986, respondent filed an amendment to answer advising that because the administrative expenses respondent had applied to reduce the marital deduction had increased, and would continue to increase until a final decision is reached, the amount of the marital deduction would continue to decrease, and the tax deficiency would therefore continue to increase.

On May 9, 1986, petitioner filed a motion for leave to file an amendment to petition, in which it was stated that the amendment does not prejudice respondent in that it raises no new legal issue, but merely corrects the computation of the amount in dispute. The amendment modified paragraph 4 of the petition to claim additional administration expenses as deductions from the estate, including interest on estate tax and inheritance tax deficiencies, recalculated the amount of the marital deduction to be $8,792,533, and added a new paragraph 6 to the petition, which reads as follows:

6. Administration expenses which are deductible from the gross estate will continue to increase. All such administrative expenses will be deducted on the Federal Estate Tax Return. The portion of such expenses which are allocable to the Estate's principal will effect a corresponding reduction in the marital deduction. Thus, the increase in the deduction for administrative expenses allocable to principal will be offset by a reduction in the marital deduction with the net result being no change in the amount of the deficiency. Conversely, interest due on the estate and inheritance tax deficiencies deductible as administrative expenses is allocable to the Estate's income and thus will not reduce the value of the property interest includable in the gross estate passing to the surviving spouse; therefore, the amount of the deficiency will continue to decrease by the amount of interest accrued until a final decision is entered in this case. This pleading is formal notice that Petitioners will claim that decreased deficiency when a final decision is filed under Rule 155 of the Court's Rules of Practice and Procedure.

This motion was granted on May 13, 1986.

On May 13, 1986, respondent filed a "Motion for Leave to File a Second Amendment To Answer" which added a new paragraph 8 in which he conceded "that on the alternate valuation date, the fair market value of decedent's interest in the stock of Inter-State Paving Company, Inc. was $5,043,288 as reported by petitioners on their Form 706 Federal estate tax return, rather than $7,709,782 as re-. flected in respondent's notice of deficiency dated June 6, 1985."

On May 15, 1986, petitioners filed a response to respondent's motion for leave to file amendment to answer, alleging prejudice to petitioners, if granted, and failure of respondent to comply with the Court's rules. Basically, the response asserted that since in their petition they did not

assign as error respondent's increase in the value of the paving company stock, thus conceding the increase in value, the valuation of the stock was not in issue and was not susceptible of being conceded by respondent. Petitioners alleged that the increased value for the stock was based upon a sale of said stock to an unrelated third party. Petitioners also urged that respondent's motion to concede raised a new issue less than 10 days before trial, despite the fact that in his trial memorandum dated April 24, 1986, respondent's counsel stated that the fair market value of the Inter-State Paving Co. stock had been agreed to for Federal estate tax purposes. On May 20, 1986, petitioners filed a motion to strike paragraph 8 of respondent's second amendment to answer, which was granted.

On or about July 8, 1986, respondent's attorney was involved in a motorcycle accident. Respondent's answer to petitioners' amendment to petition filed May 9, 1986, in which petitioners set out their method of computing the marital deduction, was due July 7, 1986, but was not filed. On August 31, 1987, respondent filed a motion for leave to file answer to amendment to petition, disagreeing with petitioners' allegation that accruing interest on the death taxes would not reduce the value of the property passing from the estate to decedent's widow, and thus would not reduce the marital deduction. Petitioners objected to respondent's motion for leave to file his answer to amendment to petition on the ground that it was too late, which petitioners claimed had the effect of an admission on respondent's part, due to the failure to deny that petitioners' method of computing the marital deduction is correct. The Court took this motion under consideration.

After decedent's death, by a stock purchase and redemption agreement, dated July 1, 1986, petitioners sold the decedent's stock of Inter-State Paving Co. for $7,500,000.[3] The parties stipulated a schedule "illustrating a method of computation that would accurately reflect the estate tax liability for purposes of this particular case: (1) if the parties agreed upon the amounts or 'numbers' reflected therein as the final figures and (2) if the dispute between the parties was resolved with respect to whether interest accruing upon

---

[3]This agreement was subsequently amended several times.

the federal estate and state inheritance taxes constitutes a proper reduction of the marital deduction."

The parties also stipulated that "Subsequent to May 19, 1986, the estate will continue to make payments for additional expenses, disbursements and expenditures which the petitioners will charge against the estate's principal or against the income produced by the principal, which may or may not be deductible for federal or state tax purposes."

## OPINION

The principal issue remaining for decision is whether interest payable by petitioners on Federal estate taxes, and State inheritance taxes, and on deficiencies with regard to such taxes, is chargeable against the principal of the estate or the income produced by the principal. If the interest is chargeable against income, it will not reduce the value of the interest in the estate that passes to the surviving spouse under the will, and consequently will not reduce the amount of the marital deduction.[4]

Section 2056(a), Internal Revenue Code of 1954, as amended, provides in pertinent part:

The value of the taxable estate shall, except as limited by subsection (b), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

## Section 2056(b)(4) provides:

In determining for purposes of subsection (a) the value of any interest in property passing to the surviving spouse for which a deduction is allowed by this section—

(A) there shall be taken into account the effect which the tax imposed by section 2001, or any estate, succession, legacy, or inheritance tax, has on the net value to the surviving spouse of such interest; and

(B) where such interest or property is encumbered in any manner, or where the surviving spouse incurs any obligation imposed by the decedent with respect to the passing of such interest, such encumbrance or obligation shall be taken into account in the same manner as if the amount of a gift to such spouse of such interest were being determined.

---

[4]The parties appear to disagree on the effect on the marital deduction if the interest is chargeable to principal. We do not address this issue.

This provision, known as the marital deduction, was first enacted in 1947, in an attempt by Congress to equalize the impact of the estate tax on the estates of decedents residing in non-community property States with the tax imposed on the estates of decedents residing in community property States. *Estate of Whipple v. United States,* 419 F.2d 494 (6th Cir. 1969). The deduction was first limited to one-half of the adjusted gross estate. By the Tax Reform Act of 1976, the limit was changed to the greater of $250,000 or one-half of the adjusted gross estate. Section 403(e)(3) of the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 305, removed the limit entirely for decedents dying after December 31, 1981. To avoid having the latter revision result in wills executed prior to the revision, containing a maximum marital deduction formula clause for the widow's bequest, granting to the widow more than the decedent intended, the revision did not affect wills executed before September 12, 1981, unless the formula clause was revised after September 12, 1981, and before decedent's death to specifically make the unlimited deduction apply. *Estate of Neisen v. Commissioner,* 89 T.C. 939 (1987).

Decedent's will in this case was executed on December 10, 1981, and decedent died on January 1, 1982, so the unlimited marital deduction is available to the estate. Furthermore, the will refers to the "maximum marital deduction" many times, and there can be no doubt that decedent was fully aware of the revision in the law and that he intended to take full advantage of it.

Whether an expenditure on behalf of an estate is chargeable to principal, or the income produced thereby, depends on the law of the State wherein decedent was a resident at the time of his death, or upon the terms of decedent's will. State laws that deal with the subject usually provide that certain types of expenditures *may* be charged against the principal, or income, of an estate, rather than *provide that they must be charged* against one or the other.

However, section 35-6-113(b) of the Tennessee Principal and Income Act provides:

All other expenses * * * and other costs incurred in maintaining or defending any action to protect the trust or the property * * * shall be paid out of principal. Any tax levied by any authority, federal, state or

foreign, upon profit or gain defined as principal under the terms of subsection (b) of section 35-6-104 shall be paid out of principal, not withstanding the tax may be denominated a tax upon income by the taxing authority.

At first blush this would seem to provide an answer to our problem. However, a more careful reading reveals that it refers to "all other expenses" incurred in protecting trust property, and taxes upon "profit or gain" defined as principal, which would not apply to interest on delinquent Federal estate or State inheritance taxes. Furthermore, section 35-6-113(a) of the act prescribes that "all ordinary expenses incurred in connection with the trust estate or with its administration and management, including regularly recurring taxes assessed against any portion of the principal * * * shall be paid out of income."

We conclude, and we believe the parties agree, that there is no provision in Tennessee law that directs where the interest here at issue should be charged. The law does not require that it be charged to principal; nor does it require that it be charged to income.

The principal objective of a court in construing wills is to determine and apply the intention of the testator, as expressed in the language of the will. *First Trust Co. of St. Paul v. United States,* 402 F. Supp. 778 (D. Minn. 1975). Unfortunately, that is not always easy to do because the language used can at times lead to diverse interpretations. In this case, both parties believe the language in the will supports their positions.

Respondent points to item I of decedent's will which expressly directs his executors to "pay out of my residuary estate * * * all fees and expenses incident to the administration of my estate" and respondent refers to *Estate of Bahr v. Commissioner,* 68 T.C. 74 (1977), which states that interest accrued on Federal estate tax and interest accrued on State death taxes are taxes incident to the administration of an estate. We agree that interest on estate taxes is incident to the administration of an estate, but that does not mean that it should be paid out of the principal of the estate rather than income of the estate. It would seem more natural and equitable that interest on deferred estate and inheritance taxes would be chargeable to the income from

the estate produced by assets which were not used immediately to pay the taxes.[5] We also note that item I of this will, after providing that all death taxes shall be paid out of the residuary estate, provided that estate and inheritance taxes paid from the residuary estate should be charged against that portion of the residuary estate devised to the Richardson Trust created under the will for the benefit of decedent's children. The petitioners also point out that item I of the will gives the executor discretion to claim deductions for such expenses on either the estate's income or estate tax returns, regardless of whether charged against principal or income on the estate's accounting records.

We think it is clear from the language in the will as a whole that one of the prime intentions of the decedent was to obtain for the benefit of the estate the maximum marital deduction. Compare *First Trust Co. of St. Paul v. United States, supra; Estate of Neisen v. Commissioner, supra; Estate of Milliken v. Commissioner,* 70 T.C. 883 (1978). This is repeated several times in the will, and the executors are admonished several times not to administer a provision in such a way that it would prevent obtaining the maximum marital deduction. If respondent were to prevail in his argument here, the estate would not obtain the maximum marital deduction, which we believe would be contrary to decedent's intention.[6]

We have not been cited to and have not found many cases involving the specific issue we have here—whether the interest on delinquent death taxes is chargeable to the income of the estate, or to the principal of the estate, which respondent claims would reduce the marital deduction under a marital deduction formula provision in a will. There have been other cases which involve the chargeability of administration expenses, and the death taxes themselves, as related to the marital deduction. While they are not too precise and are at times seemingly inconsistent, they do provide guide

---

[5]While we recognize that a Revenue Ruling is not authoritative, see Rev. Rul. 80-159, 1980-1 C.B. 206.

[6]Petitioner offered the testimony of two trust officers from two of the largest banks in the State, both of whom testified to the effect that if they were administering this estate, they would charge the interest paid for deferring payment of the death taxes against the income of the estate.

posts for deciding the issue in this case.[7]

*Pearson v. Commissioner,* 4 T.C. 218 (1944), affd. 154 F.2d 256 (3d Cir. 1946), involved interest required to be paid on an estate tax deficiency of an estate of which petitioner was income beneficiary. The question was whether the interest was chargeable to income or principal of the estate. Noting that if the payment had been for taxes, it would clearly have been chargeable against principal under the terms of the will and trust, but "interest on a tax is not a tax, but is something in addition to the tax" and is payable out of the income of the life tenant and not out of the principal reserved for the remainderman. The Court remarked that a provision in a will that all estate and inheritance taxes be paid out of principal of the estate does not refer to interest on delinquent tax payments.

In *Estate of Roney v. Commissioner,* 33 T.C. 801 (1960), affd. 294 F.2d 774 (5th Cir. 1961), absent directions in the will, administration expenses were claimed as deductions on the fiduciary income tax returns and were not applied to reduce the gross estate. The Commissioner did apply them to reduce the gross estate and the marital deduction, and was sustained by the Court. The Court emphasized that the date of death is the crucial time in determining the amount available for the marital deduction, and that the interest passing to the surviving spouse is only such interest as the decedent can give. So if the spouse pays, or the estate income is used to pay, claims against the estate so as to increase the residue, such increase is acquired by purchase and not by bequest. Accordingly, the value of any such additional part of the residue passing to the spouse cannot be included in the marital deduction. The *Roney* case supports respondent's arguments to some extent but it involved administration expenses which are usually charged against the principal of an estate. Also, the emphasis seemed to be on timing. The estate was not permitted to build up the gross estate, after the date of death, from assets that were not a part of the gross estate at decedent's death. See sec. 20.2056(b)-4, Estate Tax Regs. In this case,

---

[7]We realize that in cases involving pre-1982 limited marital deduction law, the importance of maintaining the largest possible marital deduction base was not always as prominent as it is under present law.

the reverse is the situation. Respondent is attempting to reduce the principal of the estate, as it existed at the time of decedent's death, by interest that has accrued since decedent's death. To pay the interest on the deferred taxes out of income of the estate would neither increase nor decrease the principal of the estate as it was at the time of decedent's death.

This issue arose in *Estate of Whipple v. United States, supra* at 499. The Sixth Circuit concluded:

We hold that the ultimate burden of federal estate tax payment is determined by state law, and under Kentucky law is not a burden upon the surviving spouse's share in the intestate's estate. Therefore, the surviving spouse is entitled to receive the benefit of the marital deduction, undiminished by any part of the federal estate tax.

In *Estate of Bahr v. Commissioner, supra,* a Court-reviewed opinion, the estate incurred liability for projected interest on deferred estate tax, which the estate deducted as an administration expense on the estate tax return. Respondent disallowed the deduction on the ground that interest on a tax was the same as the tax itself, which was not deductible as an administration expense. The Court held that the projected payments claimed by the estate were deductible as administration expenses, stating that except in *Ballance v. United States,* 347 F.2d 419 (7th Cir. 1965), the courts have recognized that interest on a tax, though collected in the same way, is not a tax, but is deductible as an administration expense. *Estate of Todd v. Commissioner,* 57 T.C. 288 (1971); *Estate of Webster v. Commissioner,* 65 T.C. 968 (1976). See also *Ungerman Revocable Trust v. Commissioner,* 89 T.C. 1131 (1987).

However, in *Estate of Bailly v. Commissioner,* 81 T.C. 246 (1983), supplemental opinion 81 T.C. 949, this Court held that an estate may deduct interest on its Federal and State tax liabilities only as it accrues and becomes certain. In that case, the estate had elected under section 6166 to pay its estate tax liability in 10 annual installments. It estimated the amount of interest it would have to pay and deducted it as administration expense. While the parties agreed that interest paid on estate taxes was deductible as an administration expense, respondent claimed that it could not be deducted until it had accrued. The Court agreed with

respondent, because the widely fluctuating interest rates made it impossible to make a reasonable estimate of the unaccrued interest—and distinguished *Estate of Bahr v. Commissioner, supra,* on that ground. Upon reconsideration (see 81 T.C. 949), the Court recognized that its conclusion would cause hardship to the taxpayers having to file supplemental returns to claim the deduction, so it agreed to postpone entry of decision in the case until the final installment of the estate tax liability is due.[8]

Since the *Bailly* case was decided, this Court has decided several other cases having the same issue and has followed *Bailly.* See *Estate of Spillar v. Commissioner,* T.C. Memo. 1985-529; *Estate of Hoover v. Commissioner,* T.C. Memo.1985-183. But those cases did not involve the issue we have here. They were decided on the theory that to be *deductible* an expense must be determinable with reasonable certainty. Here, the respondent proposes to use the estimated interest that will be due on the deferred taxes to reduce the amount of the marital deduction. But under the reasoning of the above cases, if the estimated interest cannot be determined with reasonable certainty, it is not accruable—and thus should not be usable to reduce the adjusted gross estate upon which the marital deduction is based.

We decline to extend the uncertainty with respect to the *deduction* of interest on deferred taxes created by *Bailly* to the determination of *the amount of an estate tax marital deduction.* We hold for petitioners on this issue.

Our conclusion above, on the basic issue in this case, makes unimportant a ruling on respondent's motion for leave to file answer to amendment to petition filed August 31, 1987; but to complete and close the record in this case we will grant respondent's motion for leave to file, and respondent's answer to amendment to petition, lodged August 31, 1987, will be received and filed. See *Dixon v. Commissioner,* 60 T.C. 802 (1973).

*Decision will be entered under Rule 155.*

---

[8]We do not have *deductibility* of the interest before us—only the amount of the marital deduction. See *Estate of Spillar v. Commissioner,* T.C. Memo. 1985-529.