Virginia Hughes CHILES, Executrix of the Estate of Earle A. Chiles, deceased, Plaintiff–Appellant,

v.

UNITED STATES of America, Defendant–Appellee.

No. 86–4328.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 1987.

Decided March 31, 1988.

Mark C. McClanahan, Miller, Nash, Wiener, Hager & Carlsen, Portland, Or., for plaintiff-appellant.

Raymond Hepper, Dept. of Justice, Washington, D.C., for defendant-appellee.

Before HUG, FARRIS and CANBY, Circuit Judges.

CANBY, Circuit Judge:

This is a tax refund case for the entire amount of federal estate tax assessed against and paid by the estate of decedent Earle A. Chiles. Virginia Hughes Chiles, executrix of the estate ("Estate"), appeals the district court's summary judgment in favor of the Government. The Estate argues that the unlimited marital deduction for bequests to surviving spouses[1] precludes imposition of any federal estate tax in this case. Alternatively, the Estate claims that the assessment of federal estate taxes in this case violates the Uniformity Clause and the Fifth Amendment of the Constitution. We affirm.

## BACKGROUND

Earle A. Chiles, an Oregon resident, bequeathed his entire estate of approximately $20 million to his surviving wife, appellant Virginia Hughes Chiles. At the time of Mr. Chiles' death in 1982, Oregon imposed a substantial inheritance tax on transfers of property to a surviving spouse.[2] The Estate ultimately paid $2,299,121 in Oregon inheritance taxes. Federal estate taxes were assessed on the taxable estate, which consisted of property that did not pass to the surviving spouse—the sum of the estate's debts, expenses, and state taxes.[3] Under a complex series of calculations,[4] the

---

1. I.R.C. § 2056 (West 1987).

2. Oregon has since eliminated its independently calculated inheritance tax on all estates of decedents dying on or after January 1, 1987. Or. Rev.Stat. § 118.100(1)(b)(1987). Oregon now imposes a state inheritance tax equal to the

federal credit for state inheritance taxes under I.R.C. § 2011. Or.Rev.Stat. § 118.100(2)(1987).

3. I.R.C. § 2053 (West 1987).

4. *See* Interrelated Computations for Estate and Gift Taxes, Treas.Pub. 904 (Rev. May 1985).

Estate was determined to owe $1,487,530 in federal estate taxes.[5]

The Estate concluded that the Code's unlimited marital deduction would offset any amount of federal estate taxes due because the decedent bequeathed his entire estate to a surviving spouse. The Estate paid the federal taxes assessed against it, and subsequently filed a claim for refund with the IRS for the full amount of taxes paid. The IRS failed to refund, taking the view that the portion of the gross estate used to pay state and federal estate taxes does not pass to the surviving spouse, and consequently cannot qualify for the marital deduction. The Estate subsequently filed suit in federal district court seeking a full refund of all federal estate taxes paid. The district court granted the government's motion for summary judgment. The Estate now appeals.

## DISCUSSION

### 1. *The Unlimited Marital Deduction*

■ Before 1981, the maximum marital deduction for bequests to a surviving spouse was limited to one-half of a decedent's adjusted gross estate.[6] In the Economic Recovery Tax Act of 1981 ("ERTA"),[7] Congress expanded the marital deduction to eliminate repetitive taxation of property transferred between a decedent and a surviving spouse:

> For purposes of the tax imposed by Section 2001, [the federal estate tax] the value of the taxable estate shall, except

as limited by subsection (b), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

I.R.C. § 2056(a)(West 1987). The unlimited marital deduction was enacted to permit deferral of all federal estate taxes on interspousal transfers until the death of the surviving spouse: "an individual should be free to pass his entire estate to a surviving spouse without the imposition of any additional tax." *See* H.R.Rep. No. 97–201, *supra* note 7, at 377; S.Rep. No. 97–144, 97th Cong., 1st Sess. 127 (1981), U.S.Code Cong. & Admin.News 1981, p. 228, *reprinted in* 1981–2 C.B. 461.

Despite the extensive legislative history indicating the congressional intent to eliminate all taxes on interspousal transfers, the unlimited marital deduction is subject to certain restrictions: "There shall be taken into account the effect which the tax imposed by Section 2001, or any estate, succession, legacy, or inheritance tax, has on the net value of the property passing to the surviving spouse." I.R.C. § 2056(b)(4)(A) (West 1987). The Government argues that this section precludes deduction of any state or federal inheritance taxes under the marital deduction because those taxes are subtracted directly from the gross estate before the marital deduction is calculated.

---

**5.** To determine its federal tax liability, the federal estate tax rate set forth in I.R.C. § 2001 was applied to the taxable estate. In this case, the state inheritance taxes constituted the bulk of the taxable estate. Although the Code provided a credit for some amount of the state taxes paid, the credit offsets only a portion of the federal estate taxes due on estates larger than $10 million. *See* I.R.C. § 2011. The resulting federal estate taxes decreased the non-taxable estate, since the taxes were paid out of the gross estate. The federal estate taxes further increased the size of the taxable estate, resulting in more federal taxes. This process of deducting taxes from the non-taxable estate, thereby increasing the taxable estate, and generating additional federal taxes, continued until the amount of additional federal tax due approached zero. *See* Treas.Reg. § 2056(b)–4(c)(1958).

**6.** The limited marital deduction permitted a deduction for the greater of $250,000 or one-half of the value of the decedent's adjusted gross estate bequeathed to a surviving spouse. Upon the death of the surviving spouse, the same estate would be subject to full federal estate taxation. Thus, prior to 1981, the entire amount of property held by a marital unit was potentially subject to federal estate tax one and one-half times. H.R.Rep. No. 97–201, 97th Cong., 1st Sess. 159 (1981), U.S.Code Cong. & Admin.News 1981, p. 105, *reprinted in* 1981–2 C.B. 377.

**7.** Pub.L. No. 97–34, § 403(a), 95 Stat. 172, 301 (1981).

The Estate concedes that § 2056(b)(4)(A) on its face excludes any state and federal taxes from the deduction, but contends that it was impliedly repealed by the enactment of the unlimited marital deduction.

We are compelled to agree with the Government. In eliminating the maximum amounts available under the marital deduction, Congress repealed I.R.C. § 2056(c). Although the legislative history suggests that many Senators and Congressmen who voted for the unlimited marital deduction did not believe that anything, including federal estate taxes, would diminish an estate passing to a surviving spouse, the language of § 2056(b)(4)(A) was left unchanged. *See* House Report, *supra* note 7. We find the fact that Congress did not alter or eliminate § 2056(b)(4)(A) dispositive. Congress could have modified or deleted this qualification when it passed the ERTA amendments in 1981. We cannot conclude that Congress chose to repeal § 2056(c) expressly and left § 2056(b)(4)(A) intact only to effectuate its repeal by implication.

■ When a literal interpretation of a statute is reasonable, we must be cautious in considering legislative history offered in support of a contrary opinion, "especially when that statute is contained in the Internal Revenue Code." *Feldman v. C.I.R.*, 791 F.2d 781, 783 (9th Cir.1986). In this case, the legislative history does not demonstrate any congressional intent to repeal § 2056(b)(4)(A) by enactment of the unlimited marital deduction. Section 205(b)(4)(A) historically had always operated to reduce the marital deduction otherwise specified by Congress. "[W]hen two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari*, 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41

L.Ed.2d 290 (1974). We conclude that the 1981 ERTA amendments enacting the unlimited marital deduction did not impliedly repeal § 2056(b)(4)(A). The Estate was not entitled to a deduction for the amount of federal estate taxes paid under the unlimited marital deduction.

### 2. The Uniformity Clause Claim

■ The Estate alternatively argues that the interrelated formula for calculating the Estate's federal estate tax liability violated the Uniformity Clause of the Constitution by unfairly burdening taxpayers residing in states with high inheritance taxes.[8] This claim is without merit. The Uniformity Clause requires geographical, not intrinsic, uniformity. *Estate of Bomash*, 432 F.2d 308, 312 (9th Cir.1970), *quoting, Fernandez v. Wiener*, 326 U.S. 340, 359, 66 S.Ct. 178, 188, 90 L.Ed. 116 (1945). The federal tax is the same for taxable estates of the same size, wherever located. It is state law that affects the size of the taxable estate. The Supreme Court has held that variations in state law that subject taxpayers in different states to differing tax burdens do not create an unconstitutional lack of uniformity. *Riggs v. Del Drago*, 317 U.S. 95, 102, 63 S.Ct. 109, 112, 87 L.Ed. 106 (1942); *Poe v. Seaborn*, 282 U.S. 101, 117–18, 51 S.Ct. 58, 61–62, 75 L.Ed. 239 (1930).

### 3. The Right to Travel Claim

■ Finally, the Estate claims that the federal estate tax as applied in this case violates the Fifth Amendment's guarantee of the right to travel,[9] because the tax places a financial burden on the right of Oregon citizens to retain their Oregon domiciles. We disagree. There is no authority in support of the Estate's novel claim, and we fail to see how the federal tax actually impinges on the right to travel. Variations

---

**8.** The Uniformity Clause provides: "The Congress shall have Power to lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform throughout the United States." U.S. Const. art. I, § 8, cl. 1.

**9.** Although the textual source is debatable, the Supreme Court has recognized the right to travel as a basic right under the Constitution. *See Attorney General of N.Y. v. Soto–Lopez*, 476 U.S. 898, 102–03, 106 S.Ct. 2317, 90 L.Ed. 899, 905 (1986).

in the federal tax burden are merely functions of differences in state tax—a condition that can hardly be regarded as inherently unconstitutional. The taxing power of Congress is not restricted by the fifth amendment unless a particular tax is so arbitrary as to constitute a confiscation of property. *Brushaber v. Union Pacific Railroad*, 240 U.S. 1, 24–25, 36 S.Ct. 236, 244–45, 60 L.Ed. 493 (1916). The federal estate tax as calculated by the interrelated formula is neither arbitrary nor confiscatory.

AFFIRMED.