ESTATE OF JAMES A. FINE, DECEASED, RICHARD W. HARRELL, COEXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 13033-87.        Filed May 23, 1988.

*H. Stephen Merlin,* for the petitioner.
*Roslyn Grand Taylor,* for the respondent.

## OPINION

WILLIAMS, *Judge:* The Commissioner determined a deficiency of $54,750 in the Federal estate tax due from the Estate of James A. Fine. After concessions by petitioner, the remaining issue for decision is whether, under the terms of decedent's will and Virginia law, the surviving spouse's portion of the residuary estate is required to bear its proportionate share of administrative expenses and estate and inheritance taxes incurred by the estate, thereby reducing the amount of the allowable marital deduction pursuant to section 2056(b)(4)(A).[1]

All of the facts of this case were stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. Petitioner is the Estate of James A. Fine, deceased, Richard W. Harrell, coexecutor (the estate). Richard W. Harrell had his principal place of business at Atlanta, Georgia, at the time the petition was filed.

Decedent James A. Fine died testate on June 16, 1983. Decedent was a resident of the State of Virginia at the time of his death and his will was probated in the Circuit Court of Warren County, Virginia, on July 14, 1983. A Form 706, United States Estate Tax Return, was filed on decedent's behalf on September 18, 1984.

At the time of his death, decedent was married to Jewel Lily Fine. Neil B. Finn was decedent's brother. Ronald Finn and Allen J. Finn were decedent's nephews.

Decedent's will provides in relevant part as follows:

---

[1] Unless otherwise specified, section references are to the Internal Revenue Code of 1954 as in effect on the date of decedent's death.

## ARTICLE I

1. I direct that all of my just debts and funeral expenses, including the cost of a suitable tombstone, be paid as soon as practicable after my death and further that my Executor hereinafter named, be and hereby is authorized to dispose of such of my property, both real and personal, as in his discretion may be necessary to accomplish this purpose.

2. I direct my Executor to pay all estate, inheritance, and similar taxes imposed by the United States, or by any state or subdivision thereof and authorize it in its discretion to pay any such taxes imposed by any foreign jurisdiction with respect to my estate herein disposed of, or a part thereof, or any bequest or devise contained in this will (which term wherever used herein shall include any codicil hereto), and also with respect to any other property or interest of any character which may be subject to estate, inheritance, or similar taxes in my estate, and that all such taxes shall be paid out of my residuary estate without apportionment.

## ARTICLE II

1. I hereby give, devise and bequeath to my wife, Jewel Lily Fine, the residence "Hobby Horse Hill", free and clear of all debt, and all household furnishings and tangible personal property located thereon.

## ARTICLE III

1. All the rest, remainder and residue of my estate, wherever located, I give, devise and bequeath as follows:

A. One-half (1/2) to my wife, if she survives me.

B. The remainder to be divided into three equal shares; one share to Neil A. Finn, of Miami, Florida, if he survives me, and if not his share to become a part of this my residuary; one share to Ronald Finn, of New York, New York; and one share to Allen J. Finn, of New Jersey.

## ARTICLE IV

In the administration of my estate the Executor shall have the following powers, duties, and discretions, in addition to others now or hereafter conferred by law, to be exercised in its absolute discretion in any capacity to which such powers may be applicable:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(17) Any power, duty or discretionary authority granted to the Executor shall be void to the extent that its exercise shall cause my estate to lose all or any part of the tax benefit afforded by the marital deduction under federal or state laws.

On decedent's Federal estate tax return, the estate reported the surviving spouse's portion of the residuary estate as eligible for the marital deduction without reduction for taxes and administrative expenses. In his notice of deficiency issued April 9, 1987, respondent determined, pursuant to the terms of decedent's will, that the allowable

marital deduction must be reduced by the portion of the estate's administrative expenses and estate and inheritance tax burden allocable to the surviving spouse's share of the residuary estate, thereby increasing the taxable estate by $226,700. The estate timely filed a petition seeking redetermination of respondent's proposed adjustment on May 15, 1987.

Sections 2053 and 2056 provide deductions from the gross estate to arrive at the value of a decedent's taxable estate. Section 2053(a)[2] provides a deduction for funeral expenses, administration expenses, claims against the estate and certain indebtedness in respect of property as such amounts are allowable under the laws of the jurisdiction in which the estate is administered. Section 2056(a)[3] allows an unlimited deduction from the gross estate for the value of property passing from the decedent to the surviving spouse. Section 2056(b)(4)(A) provides that in determining the value of the interest passing to the surviving spouse, the effect of the Federal estate tax and other estate, succession, legacy, or inheritance taxes on the net value of the interest to the surviving spouse must be taken into account. The appropriate reference under section 2056(b)(4) is thus to the net interest received by the surviving spouse and not to the value of the interest transferred by decedent. *United States v. Stapf*, 375 U.S. 118, 125 (1963); *Estate of Reid v. Commissioner*, 90 T.C. 304 (1988). The so-called marital deduction was enacted to equalize the estate tax in commu-

---

[2]Sec. 2053(a) provides:

SEC. 2053. EXPENSES, INDEBTEDNESS, AND TAXES.

(a) GENERAL RULE.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—

(1) for funeral expenses,

(2) for administration expenses,

(3) for claims against the estate, and

(4) for unpaid mortgages on, or any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate,

as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.

[3]SEC. 2056. BEQUESTS, ETC., TO SURVIVING SPOUSE.

(a) ALLOWANCE OF MARITAL DEDUCTION.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsection (b), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

nity and non-community-property States. *Estate of Whipple v. United States,* 419 F.2d 494, 497 (6th Cir. 1969); *Estate of Richardson v. Commissioner,* 89 T.C. 1193 (1987).

We first consider whether the surviving spouse's share of the residuary estate must bear a proportionate share of the Estate's estate and inheritance tax liability, thus reducing the amount eligible for the marital deduction. Absent a controlling Federal statute, State law determines what property will bear the burden of the Federal estate tax. *Riggs v. Del Drago,* 317 U.S. 95 (1942); *Estate of Leach v. Commissioner,* 82 T.C. 952, 962 (1984), affd. without published opinion 782 F.2d 179 (11th Cir. 1986). The Internal Revenue Code provides no general rules for the apportionment of estate taxes. We look to Virginia law.

Virginia, like most other States, has enacted an apportionment statute, providing for proration of estate tax liability among the beneficiaries of an estate in proportion to the relative values of the interests received. Va. Code Ann. sec. 64.1-161 (1987); see generally *Estate of Leach v. Commissioner,* 82 T.C. at 962-966 (reviewing general purpose and scope of State apportionment statutes). Virginia's apportionment statute as in effect in 1983 provided:

Sec. 64.1-161. Apportionment required. Whenever it appears upon any settlement of accounts or in any other appropriate action or proceeding that an executor, administrator, curator, trustee or other person acting in a fiduciary capacity has paid an estate tax levied or assessed under the provisions of any estate tax law of the Commonwealth of Virginia or the United States heretofore or hereafter enacted, upon or with respect to any property required to be included in the gross estate of a decedent under the provisions of any such law, the amount of the tax so paid shall be prorated among the persons interested in the estate to whom such property is or may be transferred or to whom any benefit accrues. *Such apportionment shall be made in the proportion that the value of the property, interest or benefit of each such person bears to the total value of the property, interests and benefits received by all such persons interested in the estate, except that in making such proration each such person shall have the benefit of any exemptions, deductions and exclusions allowed by such law in respect of such person or the property passing to him* * * * [Emphasis added.]

The exception provided in the statute was designed to give a surviving spouse the benefit of any exemptions, deductions, or exclusions allowable under Federal law, unless decedent directed otherwise. *Alexandria National Bank of*

*Commerce v. Thomas,* 213 Va. 620, 194 S.E.2d 723 (1973). The most important of these exclusions is the marital deduction. Thus, the apportionment provision of the Virginia probate code provides that bequests qualifying for the marital deduction shall not be charged with a proportionate share of the estate tax.

Virginia Code section 64.1-165, however, limits the applicability of Virginia Code section 64.1-161 to situations in which decedent has not asserted a contrary intent. Thus, Virginia Code section 64.1-165 provides,

Sec. 64.1-165. Contrary provisions of will or other instruments to govern.—But it is expressly provided that the foregoing provisions of this article are subject to the following qualification, that none of such provisions shall in any way impair the right or power of any person by will or by written instrument executed inter vivos to make direction from the payment of such estate or inheritance taxes and to designate the fund or funds or property out of which such payment shall be made; *and in every such case the provisions of the will or of such written instrument executed inter vivos shall be given effect to the same extent as if this article had not been enacted.* [Emphasis added.]

Decedent's will expressly provides that estate and inheritance taxes are to be paid out of his residuary estate *without apportionment.* Consequently, the Virginia apportionment statute does not apply.

The underlying principle in the construction of wills is that the intent of the testator, if it is legal and can be determined, must control. *Borum v. National Valley Bank of Staunton,* 195 Va. 899, 80 S.E.2d 594, 598 (1954), *Arnold v. Groobey,* 195 Va. 214, 77 S.E.2d 382, 385 (1953); see *Estate of Richardson v. Commissioner,* 89 T.C. 1193 (1987). In attempting to give effect to the testator's intent, we must look at the will as a whole. As the Supreme Court of Appeals of Virginia stated:

The well settled rules of construction require that the will be read as a whole, and all its clauses reconciled, if fairly possible to do so, in view of the language used; for it is the duty of the court to give effect to every part of the instrument, provided some effect can be given not inconsistent with the general intent as gathered from the whole will. [*Jones v. Brown,* 151 Va. 622, 634, 144 S.E. 620, 623 (1928), quoted in *Arnold v. Groobey,* 195 Va. 214, 77 S.E.2d at 385.]

See also *Borum v. National Valley Bank of Staunton,* 195 Va. 899, 80 S.E.2d at 598. If two clauses of a will cannot be reconciled, the later provision is to be given effect. *Miller v. Citizens National Bank,* 191 Va. 297, 60 S.E.2d 868, 871 (1950).

Petitioner and respondent agree that, in the absence of apportionment, decedent's specific bequest in article II of his will is not required to bear a proportionate share of the taxes due from the estate. Petitioner argues, however, that the surviving spouse's one-half interest in the residuary estate also should not be required to do so because article IV(17) mandates that the executor take no action which would have the effect of reducing the allowable marital deduction. Only by interpreting the will in this way, petitioner contends, can we effectuate decedent's intent to maximize the allowable marital deduction.

We note that decedent's will was inartfully drafted and has the appearance of being reproduced almost verbatim from a form book. Although we can believe that decedent hoped to leave his wife in the best possible position, which would be achieved by maximizing the marital deduction, the plain language of the will does not permit that result. Cf. *Estate of Reid v. Commissioner,* 90 T.C. 304 (1988). We do not find the will to be ambiguous.[4]

Article I(2) of the will directs decedent's executor to pay all Federal and State death taxes and provides that all such taxes are to be paid out of the residuary estate without apportionment. Article III provides that decedent's widow is to receive one-half of the residuary estate with the remainder divided equally among decedent's brother and two nephews. Article IV lists the powers, duties, and discretion to be exercised by the executor in "the administration of [decedent's] estate." Article IV(17) provides that "Any power, duty or discretionary authority granted to the Executor shall be void to the extent that its exercise shall cause my estate to lose all or any part of the tax benefit

---

[4]Where the provisions of a will are ambiguous, Virginia law permits the use of parol evidence of facts and circumstances in existence at the time the will was drafted to show the testator's intent. *Virginia National Bank v. United States,* 443 F.2d 1030, 1034 (4th Cir. 1971); *Pittman v. Rutledge,* 198 Va. 567, 95 S.E.2d 153 (1956). In the instant case, the language of the will is clear and, in any event, petitioner did not offer any parol evidence.

afforded by the marital deduction under federal and state laws."

Petitioner argues that article IV(17) provides rules to govern the executor's actions in carrying out his specific duties under articles I, II, and III and that article I(2) must be read in light of the limitation on the executor's discretion imposed by article IV(17). The executor's obligation to pay estate and inheritance taxes out of the residuary estate would thus be circumscribed by his duty to maximize the marital deduction and, to comply with both articles, the executor would have to distribute one-half of the residuary estate to decedent's widow before paying estate and inheritance taxes out of the remainder of the residuary estate. We disagree.

Petitioner's argument overlooks the will's specific declaration in the course of directing the distribution of the estate that the Virginia apportionment statute, which would have maximized the marital deduction, is not to apply. Consequently, at best decedent's direction to the executor to take no discretionary action that would diminish the marital deduction is ambiguous. We do not think that there is any ambiguity, however, because article IV(17) is designed to circumscribe the executor's discretion and not to affect the means or order of distribution, which is specifically set forth in articles I, II, and III. We conclude that petitioner has misinterpreted the applicable provisions of the will which we believe require that estate and inheritance taxes be paid out of the entire residuary estate.

We interpret article IV as providing several powers and duties that the executor may exercise in his discretion. These powers and duties are in addition to the specific directions provided in articles I, II, and III. Petitioner has cited no Virginia law which supports its argument that the exercise of an executor's discretion under article IV also modifies the directions of the will pertaining to distributions to beneficiaries. We interpret article IV(17), directing the executor to take no action that would reduce the marital deduction, as applying only to limit the executor's discretion in the exercise of the powers and duties conferred upon him by article IV. It does not affect the executor's actions in carrying out the mandated directives of articles I, II, and

III. Article IV(17) cannot offer guidance on how decedent intended the estate's taxes to be paid in the face of the specific direction of the will making the apportionment statute inapplicable. We certainly cannot assume that decedent's use of that language was meant to contradict his disavowal of the apportionment statute.

Article I(2) provides that taxes are to be paid out of the residuary estate without apportionment. The "without apportionment" language means (1) that the maximized marital deduction safeguarded by the Virginia probate code did not apply, and (2) that the specific bequest under the will was not to bear any portion of taxes due. Furthermore, article II specifically leaves to the surviving spouse the residence "free and clear of all debt." Thus, decedent intended that his bequest of the marital residence to his widow under article II not bear any portion of the estate's tax liability. Having disavowed the benefits of the apportionment clause and identified specific property to pass to his widow free of the burden of taxes, the decedent cannot, without more than a general limitation on the exercise of executors' discretion, be found to have intended the widow's share of the residuary to be free of taxes while the remaining distributees of the residuary bear the full amount of taxes.

Article III provides for the disposition of the "rest, remainder and residue" of the estate after the distribution of the specific bequest. Read together with article I(2), article III can only be read to require the entire residuary estate to be available to pay any estate or inheritance taxes due from the estate. Only after such taxes are paid is the "rest, remainder and residue" of the estate to be distributed as provided in article III.[5]

---

[5] We note that this Court has recently addressed the question whether any portion of the Federal estate tax due from an estate should be allocable to the surviving spouse's interest in the residuary estate. *Estate of Phillips v. Commissioner,* 90 T.C. 797 (1988). The outcome of that case, however, turned on Louisiana law and is thus not determinative of the issue in the instant case.

The Ninth Circuit recently held that the portion of the gross estate used to pay Federal estate taxes does not pass to the surviving spouse and, therefore, cannot qualify for the marital deduction. *Chiles v. United States,* 843 F.2d 367 (9th Cir. 1988). In *Chiles,* the surviving spouse was the sole beneficiary of her deceased husband's estate and the estate argued that the unlimited marital deduction provided in sec. 2056(a) would thus offset any Federal estate tax liability. The estate further argued that in enacting the unlimited marital deduction, Congress impliedly repealed sec. 2056(b)(4)(A), which excludes State and Federal

Respondent further argues that the surviving spouse's portion of the residuary estate is liable for a proportionate share of the estate's administrative expenses under article I(1) of the will, consequently further reducing the value of the surviving spouse's share and the amount of the marital deduction. We note that the Internal Revenue Code provides no guidance on the order of applying section 2053 or the section 2056 marital deduction to calculate the taxable estate. Nor does the Virginia probate code provide any guidance.[6] The Virginia Supreme Court has held, however, that absent specific directions to the contrary, Virginia law provides that "all debts or liabilities of the testator must be paid before any bequests can be effectual * * * and the first mandate of the will is that all just debts of the testator should be promptly paid." *Baylor v. National Bank of Commerce*, 194 Va. 1, 72 S.E.2d 282, 284 (1952).

As in *Baylor*, decedent's will provides in article I(1) that the executor is to pay all of decedent's debts and funeral expenses as soon as practicable after his death and authorizes the executor to sell property as he deems necessary to accomplish this purpose. If article IV(17) has any force here, it is not in directing which property bears the cost of estate administration but in circumscribing an executor's choice among properties that must be sold to pay expenses. Because article I(1) provides that debts of the estate be paid as soon as practicable, and because the Virginia Supreme Court has held that under Virginia law, unless otherwise specified, all debts must be paid before any bequests are distributed, we believe decedent's will would be construed to require administrative expenses to be paid out of the entire residuary estate before distribution of the remainder in accordance with article III. We hold that the

---

taxes from deduction. If the Ninth Circuit had agreed, any estate the sole beneficiary of which was the decedent's surviving spouse would be exempt from estate tax.

The instant case is distinguishable in that there were four beneficiaries of decedent's Estate. If the will had provided that no part of the surviving spouse's share was to be burdened with taxes, there would have remained a pool of assets out of which such taxes could be paid. The Ninth Circuit's holding that the portion of the gross estate used to pay taxes does not pass to the surviving spouse is nonetheless relevant. In this case, the surviving spouse is entitled to one-half of the residuary estate after reduction for payment of taxes and it is only that lesser amount that passes to the surviving spouse that is eligible for the marital deduction.

[6]Virginia Code sec. 64.1-157 provides that administrative expenses are to be paid prior to taxes. That section applies, however, only when the estate has insufficient assets to satisfy all of the demands against it.

will requires that the administrative expenses be paid out of the residuary estate before distribution of any remaining amounts to the surviving spouse and other beneficiaries.

*Decision will be entered under Rule 155.*