**Calvin P. APPLEGATE and Irma Applegate, Petitioners– Appellees,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent– Appellant.**

No. 90–3106.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 20, 1991.

Decided Dec. 7, 1992.

---

**1126**

Ronald K. Fellheimer, David J. Babb, Jr. (argued), Fellheimer, Travers & Luckman, Pontiac, Ill., for petitioners-appellees.

·Abraham N.M. Shashy, Jr., I.R.S., Gary R. Allen, Charles Bricken (argued), Gilbert S. Rothenberg, Dept. of Justice, Tax Div., Appellate Section, Shirley D. Peterson, Dept. of Justice, Tax Div., Washington, D.C., for respondent-appellant.

Before BAUER, Chief Judge, RIPPLE, Circuit Judge, and FAIRCHILD, Senior Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

The Commissioner of Internal Revenue determined a deficiency in income taxes for 1984, and timely mailed a notice of deficiency to the taxpayers, Irma and Calvin Applegate. The Applegates filed a petition with the Tax Court seeking a redetermination of the deficiency. The Tax Court held that the taxpayers' "price later" contracts, formed in 1984, qualified for installment sales treatment under 26 U.S.C. § 453, as argued by the taxpayers. The Tax Court, however, disagreed with the taxpayers as to the characterization of the cash payments received upon execution of the contracts and reported on their 1984 return. The Tax Court held that these payments constituted ordinary income, not capital gain.[1] *Applegate v. Commissioner*, 94 T.C. 696 (1990). The Commissioner now appeals from the Tax Court's redetermination of the deficiency.

## BACKGROUND

The facts were stipulated by the parties. Irma and Calvin Applegate, Illinois residents, own farmland that is leased to six tenant farmers. The Applegates report on the cash method. Under the leases, the Applegates received one-half of the corn, soybeans, and small grain produced. The Applegates sold some of this grain and stored the rest in local grain elevators. During 1984, they sold the stored grain to two grain elevators under "price later" contracts. Upon execution of the contracts, the taxpayers received cash payments.

---

1. The taxpayers have not challenged the charac-   terization of these receipts in this court.

The contracts did not specify a purchase price, but provided that the fixing of it was deferred, to be established by the sellers (taxpayers) at any time within one year. A demand by the seller would require the buyer to pay its "regular bid price" in effect on the demand date. If the seller were to make no demand within one year, the buyer's price at the year end would control. The taxpayers made no demand before the close of 1984. Accordingly, the contract price had not been determined nor paid by the end of that year.

Farmers generally wish to store rather than sell their produce immediately after harvest because prices are usually lower due to the amount of grain available. A farmer's on-farm storage may already be full, thus forcing the farmer to store produce at local grain elevators and incur storage costs. When production is high, the local grain elevators may also be full. The "price later" contract helps to solve these problems. The farmer can move produce out of storage, thus reducing storage costs, and retain the right to select a price for the produce over the succeeding months, thus maximizing the profitability of the farm. The "price later" contract allows the grain elevators to sell the produce immediately and, thus, meet the farming community's need for storage space without building additional storage facilities. (First Suppl. Stipulation of Facts, R. at 29.)

"Price later" contracts have no established secondary market and are not normally accepted as collateral on loans. These contracts are listed as an amount receivable or intangible asset with an uncertain monetary value on a financial statement or balance sheet. They are only partially determinative of the credit-worthiness of a farmer applying for a loan. Some Illinois banks will accept assignment of a "price later" contract as repayment of a loan and some will not, due to the perceived uncertainty as to the value of these contracts. (First Suppl. Stipulation of Facts, R. at 29.)

On their 1984 return, the Applegates reported the amount of cash received on execution of the "price later" contracts as short-term capital gain. (On this appeal, they concede that the amounts should have been reported as ordinary income.) The Applegates received no other payments from the buyers in 1984, as they did not exercise their rights to fix the purchase price and receive payment during that year. The Commissioner determined that the amount the taxpayers could have received for the grain on the contract execution date, *i.e.*, the value of the grain when transferred, should have been included in 1984 income. The Commissioner issued a notice of deficiency on this basis.

Before the Tax Court, the taxpayers argued that the sales were installment sales so that income should be treated under the installment method. 26 U.S.C. § 453. The IRS contended that because the taxpayers had the unfettered right to demand immediate payment, they realized income in the amount of the buyers' bid prices on the dates the contracts were executed during 1984. In other words, because there had been full payment in 1984, there was no installment sale, and thus the installment method was inapplicable.

The Tax Court decided that there had not been full payment when the contracts were executed, and that the installment method was appropriate because, as of December 31, 1984, at least one payment was to be received after the close of the taxable year. The Tax Court looked at the definition of payment, 26 U.S.C. § 453(f)(3) and (4) (1984), noted the virtual agreement of the parties that the "price later" contracts are not readily tradable ((4)(B)), and decided that the contracts were not payable on demand ((4)(A)).

The Tax Court noted its duty to decide the latter question under Illinois law. Treas.Reg. § 15a.453–1(e)(3) (1981). Finding none directly in point, the court looked to Illinois' Uniform Commercial Code provisions dealing with negotiable instruments, and found them a "useful guide" in deciding that the contracts were payable "at a definite time [end of one year] subject to any acceleration," and therefore not payable on demand. *See* Ill.Ann.Stat. ch. 26, ¶¶ 3–108 and 3–109 (1984).

Additionally, the Tax Court gave some weight to its view that "Congress did not intend to include conditional amount contractual obligations which were not readily tradeable and which are less formalized than 'ordinary promissory notes.'" The court also noted that its decision was reinforced by *Patterson v. Hightower*, 245 F.2d 765, 768 (5th Cir.1957) (under similar contracts for sale of cotton, "[t]he amount payable to the taxpayer not being certain until the time of the exercise of the call, the profits from the sales of his cotton were income to him during the year in which they were received.").

## DISCUSSION

■ The Courts of Appeal are to review the decisions of the Tax Court in the same manner as decisions of the district courts in civil actions tried without a jury. 26 U.S.C. § 7482(a)(1) (1981). The Tax Court's interpretation of Section 453 and its construction of Illinois law were conclusions of law and, as such, are subject to *de novo* review. *See Rheinstrom v. Commissioner*, 925 F.2d 1066, 1068 (7th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 306, 116 L.Ed.2d 249 (1991). We must accept the Tax Court's factual findings unless clearly erroneous. *Levin v. Commissioner*, 832 F.2d 403, 405 (7th Cir.1987).

The installment method permits a taxpayer to spread recognition of income from an installment sale proportionally over the years in which payments are received. 26 U.S.C. § 453(c). An installment sale is a disposition of property where at least one payment is to be received after the close of the taxable year in which the disposition occurs. 26 U.S.C. § 453(b). In our case, the disposition occurred in 1984. Taxpayers then received cash and a promise by each buyer to pay a price which was contingent on the market. The price would not be determined until the taxpayers chose the day and demanded payment, or one year expired without demand. Although a taxpayer may elect not to use the installment method, § 453(d), the Applegates did not make this election.

In deciding that these were dispositions of property where at least one payment is to be received after the close of the taxable year in which the disposition occurred, the Tax Court looked at the facts as of the close of the 1984 taxable year. Viewed from that point, cash payments were still to be made. Although the Commissioner notes that the court "was evidently of the view that eligibility for installment sales treatment under Section 453 is determined as of the end of the taxable year," (Appellant's Brief, at 8) he did not argue that this view was erroneous. The Commissioner attacks the court's decision that these were installment sales only on the basis that the cash paid in 1984 plus the contracts executed in 1984 constituted full payment at the time of the sales.

■ Section 453(f)(3), defining payment, provides that except as provided in paragraph (4), the term "payment" does not include the receipt of evidences of indebtedness of the buyer. Paragraph (4) provides that receipt of a bond or other evidence of indebtedness which (A) is payable on demand or (B) is issued by a corporation ... and is readily tradable shall be treated as receipt of payment. It is clear as a matter of fact that the "price later" contracts are not readily tradable, and thus exception (B) is inapplicable.

The critical issue, then, is whether these contracts were evidences of indebtedness payable on demand.

■ We agree with the conclusion of the Tax Court that these contracts were not evidences of indebtedness payable on demand. Our reasoning is somewhat different. We find little assistance in the part of the Illinois Commercial Code dealing with a promise or order to pay a sum certain. Ill.Ann.Stat. ch. 26, ¶¶ 3–104 and 3–106 (1984). The contracts at issue here are significantly different. They are not evidences of indebtedness for a sum of money. The amount of the buyer's obligation depends on the date chosen by the seller and the buyer's bid price on that date. Although the seller's "demand" triggers the buyer's obligation to pay, it has another function which is a highly significant part

of the transaction. Before demand, or the lapse of one year without demand, the amount of the selling price and the amount due remain unknown. The seller is entitled to wait until he believes the price is best before making demand. That is a valuable right.

 We think "payable on demand," as used in this statute, refers to an option of the obligee to require immediate payment of an amount specified in or computable from the terms of the instrument, rather than an option to select a date, as of which the buyer's regular bid (itself dependent on a fluctuating market) will establish the amount (as well as the due date) of the obligation.

We note the Commissioner's argument that "since the contracts are, as a matter of fact, payable on demand, they are a cash equivalent of precisely the same sort for which, as indicated in the legislative history of Section 453(f)(4), Congress explicitly intended to deny installment treatment." Appellant's Brief, at 24; *see also* S.Rep. No. 552, 91st Cong.2d Sess. (1969), *reprinted in* 1969 U.S.C.C.A.N. 1645, 2177.

As already indicated in our discussion of § 453(f)(4), we do not agree that these contracts are cash equivalents in the sense that a demand note for a sum certain may be. Although the taxpayers could at any time have caused the contracts to become due, they could not accomplish this without forfeiting the valuable right to wait for a better price.

The parties have argued whether, if the installment method is inapplicable, there could be resort to the open transaction theory and a cost recovery method. Having determined that the Tax Court correctly found § 453 applicable, we do not reach the other questions debated.

The judgment is AFFIRMED.