ESTATE OF Ruby Miller WHITTLE, Deceased, Citizens National Bank of Decatur, Trustee, Petitioner–Appellee,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellant.

Nos. 92–1512, 92–1513.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 9, 1992.

Decided May 19, 1993.

Thomas Sly, Darrell A. Woolums (argued), Samuels, Miller, Schroeder, Jackson & Sly, Decatur, IL, for petitioner-appellee.

Abraham N.M. Shashy, Jr., I.R.S., Washington, DC, Gary R. Allen, Steven W. Parks (argued), Bruce R. Ellisen, James A. Bruton, Department of Justice, Tax Div., Appellate Section, Washington, DC, for respondent-appellant.

Before BAUER, Chief Judge, RIPPLE, Circuit Judge, and GRANT, Senior District Judge.[1]

BAUER, Chief Judge.

Ruby and John Whittle were husband and wife, and virtually all of their assets were held in joint tenancy with a right of survivorship. When John died in 1981, his gross estate was approximately $3.2 million. After allowable deductions, the taxable estate totalled approximately $1.6 million. John's interest in assets held in joint tenancy automatically terminated at his death and transferred to Ruby as his sole survivor. The only assets not held in joint tenancy were a $2,000 life insurance policy and miscellaneous personal property valued at $8,238, distribution of which was governed by Illinois law.[2] Ruby filed the requisite federal estate tax form on behalf of John's estate within the nine-month time period after John's death as dictated by section 6075(a) of the Internal Revenue Code. 26 U.S.C. § 6075(a). Ruby also elected to defer the estate tax pursuant to Code section 6166 which governs extensions of time for payment of estate tax when the estate consists largely of interests in closely held businesses. Because the estate tax was deferred, interest began to accrue. That interest was payable in installment amounts calculated pursuant to the Code.

In March 1981, Ruby created the John G. and Ruby M. Whittle Trust, designating The Citizens National Bank of Decatur, Illinois as the trustee. Ruby transferred her assets to the trust. She died four years later in March 1985, leaving the trust valued at approximately $2.9 million. By that time, the trust had paid $113,948 in interest on the deferred tax.

The bank filed a federal estate tax return for Ruby's estate. In the return, the bank claimed credit for the tax on prior transfers of property ("TPT") pursuant to Code section 2013, 26 U.S.C. § 2013. The TPT credit represented the property John owned in joint tenancy that had been taxed in John's estate.

After a review of Ruby's estate tax return, the Commissioner of the Internal Revenue Service determined that the interest payments should have been deducted from John's estate as administration expenses. Consequently, the reduced value of John's estate also reduced the amount of TPT credit that Ruby could claim under section 2013. The result of this recalculation was an increase in Ruby's taxable estate. The Commissioner issued a notice of deficiency to Ruby's estate in the amount of $19,584.

The Commissioner also reasoned that even if the interest was not an administration expense, the interest was an outstanding obligation of John's estate. He further reasoned that because Ruby received John's share subject to the estate's obligations, the value of John's estate that transferred to Ruby should have been reduced by the value of the interest payments.

The bank, as trustee for Ruby's estate, disagreed with the Commissioner. The bank argued that the interest payments were not administration expenses because no "estate" was created under Illinois law for purposes of administration under the Code. The bank cited three reasons for its argument: 1) virtually all of John's property passed to Ruby automatically as a joint tenant; 2) John's estate was not probated; and 3) the estate tax payment deferral did not create a claim against John's estate. The bank filed petitions for review with the Tax Court on behalf of the trust and Ruby's estate.

The Tax Court agreed with the bank. The court recognized that Ruby was a joint tenant; not a devisee, legatee, or heir, and that as a joint tenant, she already had an interest in the assets transferred to her by virtue of John's death. The court held that no administration expenses were incurred because the estate was not probated pursuant to the Illinois Probate Act, 755 ILCS 5/1 (formerly Ill.Rev.Stat. ch. 110½). The court held that the absence of a probate estate made it impossible for the tax deferral to benefit that

---

**1.** The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

**2.** The Tax Court noted in its opinion that no part of the Commissioner's argument rested on the

fact that the personal property may have constituted a probate estate and no dispute on this issue has been presented.

estate. Because of her joint tenant status, the court also held that Ruby received John's assets free and clear of all encumbrances except for those that were specifically imposed on her as a joint tenant.

■ We use the same standard of review for Tax Court decisions that we use for district court decisions in civil cases tried without a jury. *Applegate v. Commissioner,* 980 F.2d 1125, 1128 (7th Cir.1992). The parties have stipulated the facts, so we consider only the question of law, which we review *de novo.* We owe no special deference to the Tax Court on a legal question, but when we consider the application of the legal principle to the facts we will reject the Tax Court decision only if it is clearly erroneous. *Gunther v. Commissioner,* 909 F.2d 291, 294 (7th Cir. 1990). Here we must decide whether the interest on deferred estate tax is an administration expense of a nonprobate estate that is deductible for purposes of the TPT credit pursuant to section 2013.

■ Typically, we defer to an agency's interpretation of legislation that it administers if that reading is based on a permissible construction of the statute. *Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). No statute, however, addresses the treatment of interest on deferred tax for a nonprobated estate. In

*Cottage Savings Ass'n. v. Commissioner,* —— U.S. ——, ——, 111 S.Ct. 1503, 1508, 113 L.Ed.2d 589 (1991), the Supreme Court recognized that Congress delegated the duty of promulgating rules and regulations for enforcement of the Code and held that federal courts must defer to these rules and regulations. But despite volumes of rulings and regulations generated by the IRS, the Commissioner has not issued rules or regulations about treatment of interest on deferred tax for a nonprobate estate. For this reason, we need not defer to the Commissioner in this case.

Federal tax is imposed on the transfer of a decedent's taxable estate pursuant to 26 U.S.C. § 2001(a). The estate tax may be paid at the appropriate time after the decedent has died, or the tax may be deferred for five years, then paid in a ten-year installment plan pursuant to 26 U.S.C. § 6166. Ruby opted for the deferral. Because Ruby died four years after John, she never paid the actual tax, but only paid the interest that accrued on the deferral. Section 6166 gives no direction about how interest payments on the deferral should be treated by the survivor or the decedent.

Section 2013 allows credit for tax paid on prior transfers of property that passed to the decedent's estate from someone who died within ten years before or two years after the decedent's death.[3] John is the "some-

---

**3.** Section 2013 states in relevant part:

(a) **General rule.**—The tax imposed by section 2001 shall be credited with all or a part of the amount of the Federal estate tax paid with respect to the transfer of property (including property passing as a result of the exercise or non-exercise of a power of appointment) to the decedent by or from a person (herein designated as a "transferor") who died within 10 years before, or within 2 years after, the decedent's death....

(b) **Computation of credit.**—Subject to the limitation prescribed in subsection (c), the credit provided by this section shall be an amount which bears the same ratio to the estate tax paid (adjusted as indicated hereinafter) with respect to the estate of the transferor as the value of the property transferred bears to the taxable estate of the transferor (determined for purposes of the estate tax) decreased by any death taxes paid with respect to such estate.... For purposes of the preceding sentence, the estate tax paid shall be the Federal estate tax paid increased by any credits al-

lowed against such estate tax under section 2012....

(d) **Valuation of property transferred.**—The value of property transferred to the decedent shall be the value used for the purpose of determining the Federal estate tax liability of the estate of the transferor but—

(1) there shall be taken into account the effect of the tax imposed by section 2001 or 2101, or any estate, succession, legacy, or inheritance tax, on the net value to the decedent of such property;

(2) where such property is encumbered in any manner, or where the decedent incurs any obligation imposed by the transferor with respect to such property, such encumbrance or obligation shall be taken into account in the same manner as if the amount of a gift to the decedent of such property was being determined; and

(3) if the decedent was the spouse of the transferor at the time of the transferor's death, the net value of the property transferred to the decedent shall be reduced by the amount al-

one" in this equation. The Code does not give comprehensive instruction on how to compute that credit. Although section 2013(b) instructs how the decedent's estate (Ruby's) should compute "death taxes" paid by the transferor's estate (John's), it does not instruct how the decedent's estate should treat the interest payments resulting from that tax if the tax is deferred.

■ The Commissioner's primary argument is that the interest is considered an administration expense and may be deducted from the gross estate pursuant to Code section 2053. Treasury regulations define administration expenses as "actually and necessarily, incurred in the administration of the decedent's estate; that is the collection of assets, payment of debts, and distribution of property to the persons entitled to it." 26 C.F.R. § 20.2053–3(a). Those expenses are categorized in three ways: executor's commissions, attorney's fees, and miscellaneous expenses.

The Commissioner relies on *Estate of Gilruth v. Commissioner*, 50 T.C. 850, 1968 WL 1391 (1968), to support its contention that John's estate must be responsible for the interest payments. In that case, the parties disputed from what source the executor's and attorney's fees generated by the decedent's estate should be paid. The court held that these fees should be paid from the transferor's gross estate because they were directly related to the distribution and administration of that estate. Consequently, the deduction from the transferor's estate reduced the value of the section 2013 TPT credit.

The facts in *Gilruth* are not analogous to those in this case. Clearly, executor's and attorney's fees generated by the administration of an estate may be deductible from that estate. In contrast John's assets did not require an executor or an attorney for distribution. The interest payments are not a commission or expense, unlike the fees in *Gilruth,* and they do not reduce the amount of the estate that passes to the transferor's beneficiaries. Moreover, the Tax Court

based its decision on the fact that Ruby Whittle was a joint tenant, not a beneficiary.

Because the tax deferral interest is not a commission or fee, it must fall within the ambiguous category of "miscellaneous expenses" to be considered an administration expense within the meaning of section 2053. The regulations define miscellaneous expenses as "court costs, surrogates' fees, accountants' fees, appraisers' fees, clerk hire, etc." 26 C.F.R. § 20.2053–3(d). Again, interest is not one of the listed items in the regulation and we must determine what constitutes "etc." to know whether interest is a miscellaneous expense. The regulation offers a glimpse of what "etc." may encompass when it provides that "[e]xpenses necessarily incurred in preserving and distributing the estate are deductible, including the cost of storing or maintaining the property of the estate, if it is impossible to effect immediate distribution to the beneficiaries." 26 C.F.R. § 20.2053–3(d). But the interest incurred by virtue of Ruby's election to defer the estate tax did not occur because "immediate distribution" of the property was "impossible." We might infer, then, that the interest here is not an administration expense. Inferences, however, are not a sufficient basis for a decision.

In *Ballance v. United States*, 347 F.2d 419 (7th Cir.1965), this court considered two separate issues. First, we considered whether interest accruing after the decedent's death for debts incurred during the decedent's lifetime are deductible as an administration expense. Second, we considered whether interest on delayed payments of federal estate tax on the decedent's estate, all payments having been made by the estate, is deductible as an administration expense. The second issue is especially relevant to this case. On that issue we affirmed the district court's ruling that the "taxpayer was not entitled to an expense of administration deduction for the interest on delayed payments of the federal estate tax." *Id.* at 422. We determined that because interest is a charge to the estate for its use of the unpaid tax, a reduction of

lowed under section 2056 (relating to marital deductions) as a deduction from the gross estate of the transferor.

the taxable estate would defeat the purpose of charging interest. In *Ballance,* we considered section 812 of the 1939 Code, the predecessor to section 2053. Neither the bank nor the Tax Court cited *Ballance.* The Commissioner discussed the case in a footnote, arguing that the "rulings of the Internal Revenue Service and the more recent decisions of the Tax Court" show that *Ballance* "no longer reflects the manner in which the provision allowing a deduction for administration expenses has actually been administered." (Commissioner's brief at 17 n. 9).[4]

The Commissioner claims that a more recent line of court decisions establishes that interest payments on deferred tax are administration expenses for purposes of section 2053 and therefore are deductible from a decedent's estate. They are *Estate of Bahr v. Commissioner,* 68 T.C. 74, 1977 WL 3655 (1977), *Estate of Buchholtz v. Commissioner,* 70 T.C. 814, 817, 1978 WL 3345 (1978), and *Estate of Bailly v. Commissioner,* 81 T.C. 246, 248, 1983 WL 14862 (1983), motion to reconsider denied, 81 T.C. 949, 1983 WL 14903 (1983).[5] We find these cases distinguishable from the situation we now consider.

In *Bahr,* the Tax Court held that when estate tax is deferred to protect the estate from a forced sale of assets, the interest is incurred to preserve the estate and therefore is a deductible administration expense. *Bahr,* 68 T.C. 74, 83. The decedent in *Bahr,* however, left an estate that required administration by its executors, and had to defer the tax in order to preserve that estate. John Whittle did not leave a probate estate; the interest on the tax deferral could not have been incurred to preserve it. For this reason, the Tax Court held that the interest was not an administration expense and it is the reason this case is distinguishable from *Bahr.*

In *Buchholtz,* the Tax Court examined an estate with a tax deficiency. The court held that the interest on the deficiency was deductible as an administration expense. *Buchholtz,* 70 T.C. 814, 817. *Buchholtz* is

also distinguishable on its facts. There, the estate tax was deficient. Here, the estate tax was deferred. Revenue Ruling 79–252 later pointed out that "[i]nterest on a federal estate tax deficiency is a necessary administration expense under section 2053(a)(2) and is deductible to the extent allowable under local law." But a deficiency is the amount which the taxpayer has failed to pay without justification under the law. *See* 26 U.S.C. § 6211. In contrast, a deferment is a legally available option to postpone payment of estate tax. *See* 26 U.S.C. § 6324A. A deficiency does not benefit the surviving joint tenant; a deferment does. The interest was not incurred to protect John's estate because his interest automatically terminated.

Despite the Commissioner's urging, we cannot rely on *Bailly* either. A key fact in that case has not been divulged: how the decedent's assets were transferred. In the case before us, the Tax Court deemed Ruby Whittle's status as a surviving joint tenant the critical fact in its decision. (Tax Court opinion at 8). Even the bank concedes that if Ruby had not been a surviving joint tenant, then the interest payments would be deducted from John's estate and reduce Ruby's section 2013 TPT credit. (Bank brief at 11). But the *Bailly* court presupposed that the accrued interest payments in that case were administration expenses because the only issue the court confronted was whether estimates of future interest payments were also deductible as administration expenses. *See Bailly I,* 81 T.C. at 248.

A more recent court decision provides guidance. In *Estate of Street v. Commissioner,* 974 F.2d 723 (6th Cir.1992), the Sixth Circuit considered whether interest payments on deficient tax may be deducted from a decedent's estate. The decedent, Gordon Street, bequeathed an estate valued at $34.2 million to his wife Ruth, except for $10,000 that he bequeathed to his son. Gordon left a will that directed his executors and trustees

---

4. *Ballance* has also been cited for not recognizing the distinction between estate tax interest and the taxes themselves. *Estate of Bahr v. Commissioner,* 68 T.C. 74, 79, 1977 WL 3655 (1977). We do not interpret *Ballance* in the same manner. *Ballance* made the distinction, but confu-

sion exists because the interest and the tax were collected together. *See Ballance,* 347 F.2d at 421.

5. *See Snyder v. United States,* 582 F.Supp. 196 (D.Md.1984) (discussing these cases).

384

to pay all estate, inheritance, and death taxes from his estate. When the Commissioner reviewed the estate's tax forms, he determined that the value of stocks that Gordon bequeathed to Ruth had been significantly undervalued. The Commissioner recalculated the estate value at $59.4 million and also recalculated the taxes. Gordon's estate ended up owing significantly more money.

A debate arose over whether the administration expenses and interest accruing on the newly recognized tax deficiencies could be deducted from Gordon's gross estate as administration expenses, which would reduce Ruth's section 2056 marital deduction. *Id.* at 725. The Tax Court found that, under both state law and the terms of the will, the deficiency interest for the state inheritance tax and federal estate tax should be figured when calculating the value of Gordon's estate. The Tax Court held, however, that the interest could not be deducted from the principal of the estate, but could be deducted from the estate's income. The court believed that the value of the estate was frozen at the date of death. Therefore, the Tax Court reasoned, Ruth's marital deduction could not be reduced because it was based on the estate's principal, not the estate's income. *Id.* at 726.

The Sixth Circuit in *Street* considered an earlier Tax Court decision concerning estate tax interest and its treatment, *Richardson v. Commissioner*, 89 T.C. 1193, 1987 WL 257908 (1987). In *Richardson*, the Tax Court noted the similarities between tax and interest payments on tax, but distinguished their treatment and source of their payment. The court observed that the value of an estate is calculated at the time of the decedent's death, but interest on deferred estate tax accrues after the decedent's death. The interest payments were deemed to be materially different from the administration expenses. The *Richardson* court reasoned that deducting interest payments from the principal would improperly reduce the value of the estate, and held that the interest should be

paid from the income earned by the decedent's estate. Those payments would not affect the value of the interest in the estate that passed to the surviving spouse and consequently would not reduce the marital deduction. The policy supporting the decision was to preserve the value of the estate at the time of the decedent's death. *Richardson*, 89 T.C. at 1200. The Sixth Circuit followed that portion of the *Richardson* reasoning, and concluded that the interest payments should not affect the value of the transfer to the surviving spouse but noted that administration expenses could be paid from income of the estate. *Street*, 974 F.2d at 726.

Although the Commissioner attempts to use *Richardson* to establish that interest payments are administration expenses, the case actually cuts against the argument. The Commissioner misrepresents the similarities between this case and *Richardson* by partially quoting that decision as stating that the court " 'agree[d] that interest on estate taxes is incident to the administration of an estate.' " [6] (Commissioner's brief at 16). As the Sixth Circuit noted in *Street*, the Tax Court in *Richardson* "noted that administration expenses are materially different from interest on taxes because administration expenses accrue at death, whereas interest on taxes accrues after the date of death." *Street*, 974 F.2d at 727. The decedent in *Richardson* left a will that required administration of the decedent's estate pursuant to the state laws. Despite the Commissioner's claims, the Whittle's joint tenancy and the absence of a will or trust bars application of the Illinois Principal and Interest Act ("IPIA") in this situation. First, John did not leave an estate that is governed by the IPIA. Second, the IPIA applies to trustees, legatees, and heirs. Ruby Whittle was none of these. 760 ILCS 15/6 (formerly Ill.Stat. ch. 30, sec. 506(a), (e)).

■ While the issue in *Richardson* and *Street* concerned the amount taken for the marital deduction, it is sufficiently analogous

**6.** The quote, however, does not end where the Commissioner indicated. In the *Richardson* opinion, the period is a comma, and the sentence continues: "but that does not mean that it should be paid out of the principal of the estate

rather than income of the estate." The statement reflects the distinct treatment afforded interest payments from that afforded administration expenses.

to be used to analyze the amount available for section 2013 TPT credit in light of a joint tenancy. In each of those situations and the situation here, the question is whether interest can be deducted from the taxable estate, thereby reducing the amount that transfers to the surviving spouse.[7] We believe the cases show that the value of the property transferring to the surviving spouse should not be affected by the amount of interest accrued on the deferred estate tax. The result is that the section 2013 TPT credit is not reduced. Unlike the *Street* and *Richardson* situations, no income bearing estate exists here to allow deduction of the interest payments, so the value of the interest payments cannot reduce John's property interest. Because the tax deferral ultimately benefitted Ruby, it seems appropriate that her estate should bear the interest expense.

■ The Commissioner next argues that even if the interest is not an administration expense, it should be deducted from John's estate because it is an obligation that arose from the estate. If the interest payments are an obligation that encumbers John's estate, as the Commissioner argues, Ruby takes the property subject to that encumbrance and receives a reduced net benefit from John's estate. This would in turn reduce the section 2013 TPT credit. The Commissioner's scenario is not the same as the one we face here. The Tax Court stated, and we agree, that because John did not have a probate estate under Illinois law, no encumbrance could be place upon it.

The fundamental flaw in the Commissioner's argument is the belief that John's death created an estate that had an obligation to pay tax and an obligation to pay interest on that tax. Rather, John's interest in the joint tenancy assets terminated and the assets became Ruby's alone by operation of law. No probate estate was created. The Commissioner argues that under section 6324(a)(1) the interest was a lien on John's property. The Tax Court recognized, however, that the obligation to pay tax on the value of John's share of the joint tenancy property fell on Ruby pursuant to 26 U.S.C. § 6324(a)(2).[8] Under the terms of this Code section, the Commissioner's argument under section 6324(a)(1) is without merit. As far as the obligation to pay the interest on the deferral, the Tax Court did not rule out Ruby's liability pursuant to 26 U.S.C. § 6324A.

The revenue rulings cited by the Commissioner do not alter our opinion that tax deferral interest payments are not administration expenses under these circumstances. Each

---

7. Section 2056(a) states:

(a) **Allowance of marital deduction.**—For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsection (b), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

The marital deduction allows a married couple to transfer their assets between themselves without paying estate or gift tax. 5 Boris I. Bittker, *Federal Taxation of Income, Estates and Gifts*, ¶ 129.1 (1984). The marital deduction was "an attempt by Congress to equalize the impact of the estate tax on the estates of decedents residing in non-community property States with the tax imposed on the estates of decedents residing in community property States" and is factored into the calculation for tax on prior transfers. *Richardson*, 89 T.C. at 1201.

8. Section 6324(a)(2) states:

(a) **Liens for estate tax.**—Except as otherwise provided in subsection (c)—

(2) **Liability of transferees and others.**—If the estate tax imposed by chapter 11 is not paid when due, then the spouse, transferee, trustee (except the trustee of an employees' trust which meets the requirements of section 401(a)), surviving tenant, person in possession of the property by reason of the beneficiary, who receives, or has on the date of the decedent's death, property included in the gross estate under sections 2034 to 2042, inclusive, to the extent of the value, at the time of the decedent's death, of such property, shall be personally liable for such tax. Any part of such property transferred by (or transferred by a transferee of) such spouse, transferee, trustee, surviving tenant, person in possession, or beneficiary, to a purchaser or holder of a security interest shall be divested of the lien provided in paragraph (1) and a like lien shall then attach to all the property of such spouse, transferee, trustee, surviving tenant, person in possession, or beneficiary, or transferee of any such person, except any part transferred to a purchaser or a holder of a security interest.

is distinguishable on its facts. *See* Rev.Rul. 79–252, 1979–2 C.B. 333 (concerning post-death interest on a tax deficiency, citing *Bahr* and *Buchholtz*); Rev.Rul. 80–250, 1980–2 C.B. 278 (concerning when deferral interest may be deductible, but noting that it must be a deductible "administration expense" under section 2053(a)(2)); Rev.Rul. 81–154, 1981–1 C.B. 470 (concerning willful late filing of estate tax return and subsequent penalties and interest, stating that interest may be deductible but only if allowable under section 2053(a)(2)); Rev.Rul. 81–256, 1981–2 C.B. 183 (concerning interest on deferral of state estate tax and extending deductibility to interest on federal tax deferral, but noting that it must be a deductible "administration expense" under section 2053(a)(2)). In these rulings, the interest must qualify as a deductible administration expense pursuant to section 2053. But we have already concluded that the interest here is not an administration expense because it resulted from an election to defer estate tax by a surviving joint tenant in the absence of a probate estate.

A key point to our decision is that interest on estate tax is not a tax. *Estate of Papson v. Commissioner*, 81 T.C. 105, 108, 1983 WL 14853 (1983). The Commissioner consistently cites accurate propositions about the treatment of tax under federal and state law, but then extends that treatment to the interest on deferred tax. The Commissioner has not persuaded us to extend existing tax rules.

Our decision is very narrow, applying only to situations where the decedent claimed a section 2013 credit for assets passing through joint tenancy from a transferor whose death did not create a probate estate. In these circumstances, the section 6166 tax deferral is made for the benefit of the decedent who was a surviving joint tenant. For this reason, the decedent, not the transferor's estate, is responsible for those interest payments. Therefore, the section 2013 credit does not have to be reduced by the amount of those interest payments.

We AFFIRM the Tax Court decision.