89 F.3d 839
 78 A.F.T.R.2d 96-5560
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
T. Bruce VEST and E.P. Vest, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 No. 95-2797.
 United States Court of Appeals, Seventh Circuit.
 Argued Feb. 23, 1996.
Decided June 24, 1996.
 
 Before RIPPLE, MANION and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 The Internal Revenue Service assessed tax deficiencies on Dr. and Mrs. Vest for the tax years 1981-1984. The Vests contested the deficiency by filing a petition before the United States Tax Court. The Vests presented nine separate issues to the Tax Court. Following a hearing and settlement of various issues, in two very thorough opinions the Tax Court upheld tax deficiencies of over $300,000. The Vests appeal, presenting six of the nine issues to this court. These issues concern the following facts.
 
 
 2
 Dr. Vest is a doctor who specializes in radiology. In 1981, while he was the head of the radiology department for Wood River Township Hospital, he proposed that the hospital invest in a General Electric Model 8800 Cat Scanner. Before the hospital purchased the Scanner a new and improved (and more expensive) model came out--the Model 9800 Cat Scanner. The hospital, however, did not want to expend the additional funds necessary to purchase the upgrade. So in 1983, Vest proposed to purchase the Model 9800 Scanner and lease it to Wood River Township Hospital. This proposal was accepted and Dr. Vest and the Chairman of the Wood River Township Hospital Board of Directors entered into a "Contract for Lease of 9800 GE Cat Scanner." Vest later upgraded the 9800 Scanner by adding a supplementary array processor and an additional disk drive, and the hospital increased its monthly lease payments to cover the upgrades. The Vests claimed an Investment Tax Credit for the Model 9800 Cat Scanner and the upgrade equipment totaling $121,000. They also claimed a deduction for a temporary building Dr. Vest had constructed to store a second Model 9800 Cat Scanner which he had purchased, pending completion of a Doctor's Clinic that Vest planned to open.
 
 
 3
 The Internal Revenue Service ("IRS") investigated the Vests' tax return and specifically the Investment Tax Credit and the deduction for the temporary building. During the investigation, Robert Meyer, the IRS agent in charge, asked Vest to produce all leases relating to the Model 9800 Scanner. Vest, however, failed to present the IRS with the "Contract for Lease of 9800 GE Cat Scanner." Instead he gave the investigating agent an "Operating Agreement," which provided for a 2-year lease of the 9800 Scanner. The Operating Agreement was purportedly signed by George Myers on behalf of the Wood River Township Hospital. Vest also gave the IRS a "Gift Letter" in which he proposed to give the Scanner to the hospital. The "Gift Letter" was also supposedly signed by Myers.
 
 
 4
 After further investigation, the IRS learned of the existence of the "Contract for Lease." It also questioned Myers concerning the Operating Agreement. Myers signed an affidavit stating that he had not signed the Operating Agreement and did not remember ever having seen it before. Based on its investigation, the IRS determined that the "Contract for Lease" was the controlling instrument and that pursuant to the terms of that agreement the Vests were not entitled to an Investment Tax Credit for the 9800 Scanner or the upgrade equipment. The IRS also determined that the Vests were not entitled to a deduction for the temporary building, ruling instead that they had to capitalize the expenditure. The IRS then assessed deficiencies for the improper credit and deduction and a penalty for fraud premised on Vest's failure to present the "Contract for Lease," and his reliance on the forged "Operating Agreement."
 
 
 5
 The Vests filed suit to contest the IRS Commissioner's determination that they were liable for income tax deficiencies. Following a trial, the Tax Court held that the Commissioner had properly denied the Investment Tax Credit and deduction for the cost of the new building. The Tax Court then directed the parties to submit computations of the appropriate tax based on its underlying resolution of the issues. The parties were unable to agree on the computations, so the Tax Court held a further hearing and issued a supplemental opinion assessing a deficiency totaling more than $300,000. The Vests appeal.
 
 
 6
 On appeal, the Vests claim that the Tax Court erred when it rejected their Investment Tax Credit for the 9800 Scanner leased to the hospital and their deduction for the cost of the building used to store another 9800 scanner. The Vests also assert that the Tax Court erred when it assessed penalties for the Vests' reporting errors. Additionally, the Vests claim that the Tax Court made evidentiary errors and errors in its factual findings.[1] Because the Tax Court extensively and correctly addressed all of the Vests' contentions in a 65-page original and 19-page supplemental opinion, we affirm on the basis of the reasons set out in those detailed decisions. We add the following in summary.
 
 
 7
 The Tax Court concluded that the Vests were not entitled to an Investment Tax Credit on the 9800 Scanner because the "Contract for Lease" stated that the lease term was seven years and the Internal Revenue Code and Treasury Regulations provisions in effect at that time precluded such long-term leases from qualifying for an Investment Tax Credit. Specifically, Treasury Regulation section 1.48-1(k) provided that where property is leased to a governmental entity (which Wood River Township Hospital is) the lease must be "casual or short-term" to qualify for an Investment Tax Credit. The Vests were also precluded from taking the Investment Tax Credit based on I.R.C. Section 46(e)(3), which prohibited noncorporate lessors from receiving an investment tax credit if the term of the lease was more than 50 percent of the useful life of the equipment. The Vests admitted that the useful life of the Scanner was 9 years, so the 7-year lease also failed to satisfy this fifty-percent rule.
 
 
 8
 The Vests do not dispute that under the terms of the "Contract for Lease" they do not qualify for an Investment Tax Credit. Instead, they argue that the "Contract for Lease" was merely a preliminary negotiation between Dr. Vest and the hospital and that it was the "Operating Agreement" that controlled. Since the "Operating Agreement" provided for a two-year lease, the Vests contend that they are entitled to the Investment Tax Credit. The Tax Court rejected the Vests' position, however, finding that the "Contract for Lease" controlled. In doing so, the Tax Court relied on Myers' affidavit wherein Myers stated that he had not signed the "Operating Agreement" or the "Gift Letter" and that he did not recall ever having seen those documents before. The Vests contend that the Tax Court erred in admitting this evidence and that without this evidence its finding that the "Contract for Lease" governed is unsupported.
 
 
 9
 We review a court's evidentiary decision for an abuse of discretion. United States v. Mokol, 939 F.2d 436, 438 (7th Cir.1991). The Tax Court admitted this evidence pursuant to the Federal Rule of Evidence 804(b)(5). Rule 804(b)(5) provides a general exception to the hearsay prohibition, making an out-of-court statement admissible, where a declarant is unavailable because of death:
 
 
 10
 A statement not specifically covered by any of the [other] exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of [the rules of evidence] and the interests of justice will best be served by admission of the statement into evidence.
 
 
 11
 Fed.R.Civ.Pro. 804(b)(5).
 
 
 12
 It was not an abuse of discretion for the court to admit Myers' affidavit into evidence. Myers voluntarily made the statements under oath; he was unavailable due to his death; and there was other corroborating evidence. United States v. Snyder, 872 F.2d 1351, 1355-56 (7th Cir.1989) (setting forth the above factors as relevant in the 804(b)(5) analysis). See also United States v. Kladouris, 964 F.2d 658, 664 (7th Cir.1992) (district court did not abuse its discretion in admitting pursuant to 804(b)(5) grand jury testimony where declarant was deceased and statement contained necessary guarantees of trustworthiness). The Vests contend that the affidavit should have been excluded because Myers was not an unbiased witness given that Dr. Vest and Wood River Township Hospital were in "fierce competition" with each other. Even if it were reasonable to assume that competitors would have an incentive to perjure themselves in an unrelated legal matter, the Vests admit that Myers' affidavit was repetitive of other evidence, so even if it were error to admit the affidavit, any error was harmless. This other evidence consisted of testimony by a handwriting expert that the signature on the affidavit was not that of Mr. Myers. Additionally, the president of Wood River Township Hospital testified that he had never seen the Operating Agreement, nor was it in the hospital files, as it would have been had it been executed by the hospital. This evidence was sufficient for us to conclude that the Tax Court did not commit clear error in finding that the Contract for Lease governed the lease of the 9800 Scanner.[2] Estate of Whittle v. C.I.R., 994 F.2d 379, 381 (7th Cir.1993) ("We owe no special deference to the Tax Court on a legal question, but when we consider the application of the legal principle to the facts we will reject the Tax Court decision only if it is clearly erroneous.").
 
 
 13
 The Vests also appeal the Tax Court's decision rejecting their claimed deduction of $52,230, which was the cost of the building erected to store a 9800 Scanner. Section 263(a)(1) of the I.R.C. provided in relevant part that "no deduction shall be allowed for ... any amount paid out for new buildings...." The Vests nonetheless argue that since the building was temporary in nature, they were entitled to deduct it fully in the year of construction. The Vests fail to cite any statutory or case law excepting buildings which are temporary in nature, and we see no reason to depart from the clear import of § 263. Thus, the $52,230 deduction was properly rejected.
 
 
 14
 Dr. Vest also appeals from the Tax Court's decision affirming the IRS' penalty assessments for fraud. (No penalty for fraud was assessed against Mrs. Vest.) A finding of fraud is a finding of fact reviewed for clear error. Plunkett v. C.I.R., 465 F.2d 299, 303 (7th Cir.1972). Section 6653(b)(1) of the I.R.C. provided for an addition to the tax equal to 50% of the entire underpayment for the year if any part of the underpayment was due to fraud. And Section 6653(b)(2) provides an addition to tax equal to 50% of the interest payable under section 6601 if the underpayment is due to fraud.
 
 
 15
 The Tax Court did not commit clear error in finding that Dr. Vest had committed fraud. The evidence established that Dr. Vest claimed a tax credit after having been informed by the hospital that he was not entitled to such a credit. Even more damaging is the fact that Dr. Vest concealed the "Contract for Lease" which clearly prevented him from claiming the Investment Tax Credit and instead produced the "Operating Agreement" and "Gift Letters," which would have allowed the Investment Tax Credits, but which contained false signatures. This was more than ample evidence to support the Tax Court's findings of fraud.
 
 
 16
 The Tax Court also affirmed the IRS's assessment of penalties for negligence and for substantial understatement of a tax liability. The Commissioner may impose such penalties, and the ones imposed were proper for the same reasons supporting the fraud penalties. The Commissioner may also assess a "substantial understatement penalty" if the amount of tax shown on the return is understated by the greater of ten percent of the proper tax, or $5,000. I.R.C. § 6661(b)(1)(A). The Vests do not dispute that the understatement satisfied these requirements. Rather, they claim that the understatement penalty should be reduced because they had substantial authority to support their position. Given the Tax Court's finding of fraud, however, it was not error for the Tax Court to also conclude that the Vests' position was not substantially supported.
 
 
 17
 The Vests further argue that the Tax Court erred when it refused to consider their request to offset their deficiencies with a net operating carryback. The Tax Court refused to consider this issue because the Vests did not present it until after the court had issued its opinion of deficiency. Under Rule 155(c) all that remained was for the Tax Court to calculate the deficiency should the parties be unable to agree, and:
 
 
 18
 Any argument under this rule will be confined strictly to consideration of the correct computation of the deficiency, liability, or overpayment resulting from the findings and conclusions made by the Court, and no argument will be heard upon or consideration given to the issues or matter disposed of by the Court's findings and conclusions or to any new issues.
 
 
 19
 Rule 155(c).
 
 
 20
 Because the Vests did not raise their argument concerning the net operating carryback prior to the Rule 155(c) submission, the Tax Court acted within its discretion in refusing to consider this new issue.[3]
 
 
 21
 The Tax Court extensively considered and discussed the issues presented by the Vests in not one but two opinions. We agree with the Tax Court's analyses and conclusions therein, and for those reasons and the reasons set forth above, we AFFIRM.
 
 
 
 [1]
 In their brief, the Vests also contend that the Tax Court erred because it did not address their claim for depreciation. The Commissioner claims there was good reason--the depreciation issue had been conceded. The Vests did not respond to this point in their reply brief, but because the record contains statements by the parties agreeing on the amount of depreciation, this issue is moot
 
 
 [2]
 The Vests also argue that the "Contract for Lease" was really a service agreement and as such qualified for an Investment Tax Credit. The Tax Court rejected this argument and we agree with that determination
 
 
 [3]
 The Vests also claim that the Tax Court erred in assessing a deficiency for their 1982 tax year, but concede that this argument is valid only if they succeed in convincing this court that they are entitled to an Investment Tax Credit. They did not, so we need not address this issue